# WEBER *v.* UNSATISFIED CLAIM AND JUDG-
## MENT FUND BOARD

[No. 382, September Term, 1970.]

*Decided April 12, 1971.*

The cause was argued before HAMMOND, C. J., and
FINAN, SINGLEY, SMITH and DIGGES, JJ.

*Norman F. Summers* for appellant.

*John G. Prendergast, Jr.,* with whom were *Smith, Somerville & Case, Francis B. Burch, Attorney General,* and *William E. Brannan, Assistant Attorney General,* on the brief, for appellee.

DIGGES, J., delivered the opinion of the Court.

This is but another of a burgeoning number of suits against the Unsatisfied Claim and Judgment Fund Board. The appellant in this case is John Borst Weber, who is contesting an order of the Circuit Court for Baltimore County (Proctor, J.) which denied him permission to sue the Board. Weber, a Baltimore County police officer, contends that he has complied with all the requirements of Art. 66½, § 167, now codified with insubstantial changes as § 7-620, of the Code (1957, 1970 Repl. Vol.) and that as the injured victim of a "hit and run" automobile accident, he should be allowed to press his claim in a suit against the Board. We agree, and shall reverse the trial court's decision.

This proceeding is the result of an accident that occurred on March 7, 1970, in the Essex area of Baltimore County, on Marlyn Avenue, a short distance from where it intersects Catherine Avenue. Marlyn is a four-lane, two-way (north-south) street with parking allowed on the two outer lanes, and unrestricted use for vehicular traffic on the inner two. Weber testified that he had been returning home early that morning after attending a club meeting at the residence of his police sergeant, when the following scenario took place: He was carefully driving north on Marlyn Avenue in the unrestricted lane, at a speed of thirty miles per hour. As he approached a sharp curve in the street he saw a " '57 Chevy or '56 or '57 Plymouth," about 50-75 feet away, that was coming toward him at a fast speed on his side of the street. In what he described as a desperate effort to avoid a head-on collision, he swerved to his right, completely avoiding

contact with the other car, went over the east curb, and came to an abrupt stop upon colliding with a utility pole. Weber suffered substantial injury, including several broken bones. The "phantom car," without stopping, disappeared into the darkness. Weber felt his only recourse then was to sue the Board under § 7-620 of the Unsatisfied Claim and Judgment Fund Law. This statute enumerates the necessary prerequisites that must be fulfilled before a person can be granted leave by the court to sue the Board. Of these requirements, the Board only contends that appellant has not met subsection 7-620 (4). This subsection provides that the court, before authorizing suit, should be

". . . satisfied upon the hearing of the application, that —

. . .

(4) The applicant [seeking permission to sue the Board] has a *cause of action* against the operator or owner of the motor vehicle or against the operator who was operating the motor vehicle without the consent of the owner of the motor vehicle" (Emphasis added).

After hearing Weber's story as well as a description by a police officer and a private investigator of what physical evidence they found at the scene, Judge Proctor decided the accident could not have happened as appellant contended. He found as a fact that no phantom vehicle was involved and determined that appellant had no cause of action.

We conclude the trial judge misconstrued his function under that subsection. Instead of being "satisfied" that the appellant had established a "cause of action," he required Weber to prove the existence of a phantom vehicle in addition to other facts necessary to establish liability. Admittedly, the phrase "cause of action" has varying meanings, dependent on the context in which it is being employed. *Hamlin Mach. Co. v. Holtite Mfg. Co.,* 197 Md. 148, 153, 78 A. 2d 450 (1951). On this point we

accept the instructive statement by Justice Cardozo, speaking for the Supreme Court in *United States v. Memphis Cotton Oil Co.*, 288 U. S. 62, 67-68, 53 S. Ct. 278, 77 L. Ed. 619 (1933).

> "A 'cause of action' may mean one thing for one purpose and something different for another. It may mean one thing when the question is whether it is good upon demurrer, and something different when there is a question of the amendment of a pleading or of the application of the principle of res judicata. (Citations omitted.) At times and in certain contexts, it is identified with the infringement of a right or the violation of a duty. At other times and in other contexts, it is a concept of the law of remedies, the identity of the cause being then dependent on that of the form of action or the writ. Another aspect reveals it as something separate from writs and remedies, the group of operative facts out of which a grievance has developed. This court has not committed itself to the view that the phrase is susceptible of any single definition that will be independent of the context or of the relation to be governed."

For additional reference see 6 Words and Phrases, "Cause of Action" 581 et seq. (1966).

It seems appropriate to examine the legislative purpose in enacting § 7-620 as well as the rationale for the use of the term "cause of action" in subsection (4) to ascertain its applicable meaning. It is clear that the Unsatisfied Claim and Judgment Fund Law was passed to provide a measure of financial relief to victims of motor vehicle accidents who could not otherwise be compensated due to an inability to identify the operator or because of the operator's impecunious financial condition. At the same time this section also attempts to protect the integrity of the fund against fraud and abuse by un-

scrupulous claimants. *Grady v. Unsat. C. & J. Fund Bd.,* 259 Md. 501, 270 A. 2d 482 (1970), and cases there cited. To this end the law provides that certain enumerated conditions must be satisfied before the court grants leave to sue, and of these conditions, only subsection (4) relates to the operative facts of how the accident occurred. In the context in which the phrase is used, we conclude that "has a cause of action" was intended simply to require that the claimant demonstrate his ability to make "an averment of facts sufficient to justify a court in rendering judgment." This contextual definition was approved in Maryland, *Hamlin Mach. Co. v. Holtite Mfg. Co., supra,* as well as in other jurisdictions. See *Mobley v. Smith,* 24 Ala. 553, 138 So. 551 (1931) ; *Vickers v. Vickers,* 45 Nev. 274, 202 P. 31, 32 (1921) ; *Pursel v. Deal,* 16 Ore. 295, 18 P. 461 (1888).

The interpretation urged by appellee, which was implicitly espoused in the trial court's ruling, is simply unacceptable. If we adopt the Board's theory of how these cases should be channeled through the courts, then it would be necessary for the trial judge to make findings of fact on the issue of liability before granting leave to sue. In effect, this would require two trials of the same issues—one in requesting leave to sue and the other involving the actual suit itself. Certainly one factual determination is sufficient and we are most reluctant to permit unnecessary procedural duplication in the absence of express statutory language to the contrary. Appellee urges that this dualism is necessary to protect the fund from abuse but we find little logic in equating repetition and tedium with protection. Sufficient safeguards on this aspect of the claim are provided at the trial of the action against the Board. Apparently the Legislature accepts this interpretation. Its agreement is manifested by § 7-621 of the Unsatisfied Claim and Judgment Fund Law, added in 1964, seven years after the original act. This section, in subparagraph (3), authorizes the court to permit the substitution of the Board as a party when it is satisfied "the appellant *has instituted a cause of action*

against the operator or owner or both . . ." (emphasis added). This indicates a legislative intent that the phrase "has a cause of action" merely requires a showing by the applicant that he can state or allege facts indicating a breach of duty by an operator of a phantom vehicle that caused him damage. This exposition also seems in line with Rule 340 c *"Numbered Counts.* Separate causes of action shall be contained in separately numbered counts." This Rule uses "causes of action" as synonymous with the claims made in a declaration for relief.

With this interpretation, we believe Weber has complied with § 7-620 (4) by demonstrating to Judge Proctor that he had a prima facie case of negligence, however conflicting or contestable the operative facts of the accident might have appeared.

> "The basic elements necessary for a cause of action in negligence are a duty or obligation which the defendant is under to protect plaintiff from injury, a failure to discharge that duty, and actual loss or injury to the plaintiff proximately resulting from that failure."

*Peroti v. Williams,* 258 Md. 663, 669, 267 A. 2d 114, (1970) ; W. Prosser, *Handbook of the Law of Torts,* § 30, 146-47 (3d ed. 1964).

At the hearing required under § 7-620 Weber stated he was carefully driving along Marlyn Avenue at a safe speed when a phantom vehicle approached him in the wrong lane—conduct which would obviously have been in violation of Art. 66½, § 11-301. In an effort to avoid a head-on collision appellant claimed he was forced to swerve to the right, missing the phantom vehicle, and collided instead with a utility pole, causing damage to himself and his car. He did not have to prove these allegations at the hearing, but only satisfy the court that his claim was legally actionable. All that is required under § 7-620 (4) is an assertion of facts, which, if proven at trial, would compel recovery. Any decision on the facts themselves should be made at the later trial.

This conclusion is in conformity with the view expressed in *Flores v. Motor Vehicle Accident Indem. Corp.*, 32 Misc. 2d 884, 225 N.Y.S.2d 481 (1962) which dealt with a similar provision of the New York Uninsured Motorist act:

> "It was not within the contemplation of the Legislature that applicant present the court with such evidentiary matters as would meet every probative test of a prima facie case of negligence. A general statement of the circumstances sufficient to demonstrate that the elements of a cause of action appear, is adequate."

*Cf. Giles v. Gassert*, 23 N. J. 22, 127 A. 2d 161 (1957).

> *Order reversed. Permission to bring an action against the Unsatisfied Claim and Judgment Fund Board granted. Costs to be paid by appellee.*