683 A.2d 179

Calvin E. REAMES, et al.

v.

STATE FARM FIRE AND CASUALTY INSURANCE.

No. 1650, Sept. Term, 1995.

Court of Special Appeals of Maryland.

Oct. 1, 1996.

John R. Dugan, Rockville, for appellants.

Richard E. Schimel (Jason M. Schupp and Budow and Noble, P.C., on the brief), Bethesda, for appellee.

Argued before CATHELL, HARRELL and MURPHY, JJ.

HARRELL, Judge.

Appellants, Calvin E. Reames, his wife, Rita S. Reames, and their seventeen year old daughter Selena Reames ("Ms. Reames"), appeal from a declaratory judgment entered by the Circuit Court for Montgomery County (James S. McAuliffe, Jr., J.) declaring that appellee, State Farm Fire and Casualty Company ("State Farm"), owed no duty to defend Ms. Reames, pursuant to her parents' homeowners' insurance poli-

cy, in a civil tort action brought against her. We find no reversible error and, accordingly, shall affirm the lower court's decision.

## *ISSUE*

Appellants raise the following issue for our consideration, which we have condensed and rephrased:

Whether the tort complaint, with or without extrinsic evidence, alleged liability that was actually or potentially within the policy's coverage thus giving rise to a duty to defend.

## *FACTS*

This appeals arises out of a declaratory judgment action instituted by appellants in order to determine if State Farm, under a homeowners' insurance policy issued by State Farm on the Reames' home in Montgomery County, Maryland, had a duty to defend Ms. Reames, in a tort action brought by her former boyfriend. Under this policy, State Farm promised to provide appellants [1] a defense "[i]f a claim is made or a suit is brought against an **insured** for damages because of **bodily injury** or **property damage** to which this coverage applies, caused by an **occurrence**[.]" [2] The policy defined bodily injury and occurrence as follows:

"**bodily injury**" means physical injury, sickness, or disease to a person. This includes required care, loss of services and death arising therefrom.

**Bodily injury** does not include:

*     *     *     *     *     *

c.   emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person.

---

1.   Ms. Reames was an insured under the policy by virtue of her status as a "resident relative."

2.   All terms that are in bold-face appear that way in the policy.

"**occurrence**" ... means an accident, including exposure to conditions, which results in ... **bodily injury** ... during the policy period.

Under this policy, there was also an exclusion for bodily injury or property damage

(1) which is either expected or intended by an **insured**; or

(2) to any person or property which is the result of willful and malicious acts of an **insured**.

The underlying suit for which appellants requested a defense (hereinafter "*Salvado v. Reames*") was instituted on 16 December 1994 when Carlos J. Salvado ("Mr. Salvado") filed a two count complaint against Ms. Reames seeking substantial damages for malicious prosecution and abuse of process.[3] In his complaint, Mr. Salvado initially set forth facts describing an altercation that occurred among three individuals in the Reames's family home when he allegedly walked in on his then girlfriend, Ms. Reames, and one Brian Rucker in Ms. Reames's bedroom. According to the complaint, Mr. Salvado and Ms. Reames had begun dating in the summer of 1992 and they "became boyfriend and girlfriend." As of 1 October 1993, the two had developed a relationship whereby Mr. Salvado was permitted to enter the Reames's family home, where Ms. Reames resided, without obtaining additional permission from anyone. The factual allegations of the complaint continued that in the late evening of 1 October 1993

[Ms.] Ream[e]s lured Salvado to the House. Acting pursuant to the express and implied permission which Salvado had to enter the House, he entered the House, whereupon he found another male [Mr. Brian Rucker] and [Ms.] Ream[e]s in [Ms.] Ream[e]s' bedroom. An altercation between Salvado and said male ensued, whereupon Ms. Ream[e]s assaulted and battered Salvado.

According to the complaint, a female friend of Ms. Reames who was also present at her house then called the police and, "at the behest of [Ms.] Ream[e]s, falsely reported that a

---

3. This lawsuit was filed in the circuit court as civil action no. 130161.

breaking and entering had occurred and that an assault and battery upon [Ms.] Ream[e]s had occurred." When the police arrived, Ms. Reames allegedly told them that Mr. "Salvado had broken into and entered the House, without permission, and that Salvado had assaulted and battered her." As a result of these statements, Mr. Salvado was arrested and charged with breaking and entering and assault and battery. After a trial on these charges, Mr. Salvado was found not guilty on both charges.[4]

In the complaint's first titled count for malicious prosecution, Mr. Salvado alleged that Ms. Reames maliciously initiated the charges brought against him by providing false information to the police with a primary purpose other than bringing him to justice. Mr. Salvado alleged that these actions

> injure[d][him] personally ... by ... defaming him, seeing that he was arrested and prosecuted, causing him emotional distress, and otherwise causing him personal injury.... As a direct and proximate result of [Ms.] Ream[e]s' actions and statements, ... [he] has ... suffered the creation of a criminal record, material harm to his reputation and standing in the community, emotional distress and turmoil, embarrassment, humiliation, and other personal injuries.

The second count of Mr. Salvado's complaint for abuse of process alleged that Ms. Reames instigated, initiated, and procured the bringing of the charges against Mr. Salvado by advising, assisting, or encouraging the police to arrest him "not for a purpose for which criminal process ordinarily is used, but in order to accomplish an ulterior purpose, which was to harass, annoy, embarrass, and otherwise personally harm Salvado." The complaint alleged further that

> [a]s a direct and proximate result of [Ms.] Ream[e]s' actions and statements, Salvado has been injured ... and has suffered the creation of a criminal record, material harm to

---

4. These factual allegations were expressly incorporated into Mr. Salvado's counts for malicious prosecution and abuse of process.

his reputation and standing in the community, emotional distress and turmoil, embarrassment, humiliation, and other personal injuries.

On 10 January 1995, Ms. Reames entered into a retainer agreement with John R. Dugan, Esquire, under which Mr. Dugan was to represent her in connection with her defense in *Salvado v. Reames* and to determine if she was covered by her parents' homeowners' insurance policy. Also on 10 January, Mr. Dugan sent a letter to State Farm "requesting that State Farm defend [Ms. Reames in *Salvado v. Reames* ] . . . under the Reames' Homeowner's policy." [5] On 17 January 1995, State Farm, in a letter to appellants, stated that, based on its preliminary review "it appears that the allegations in . . . [the][c]omplaint [filed against Ms. Reames] do not fall within the purview of coverages under [the policy]." State Farm therefore recommended that Ms. Reames' personal attorney file an answer to the complaint while the case was submitted "for a formal review." [6] In support of its anticipatory denial of coverage, State Farm explained:

'[It] is questionable whether the damages alleged in the Complaint resulted from an occurrence as defined in the policy.' 'Occurrence' . . . means an accident . . . which results in . . . bodily injury . . . during the policy period. . . . '[B]odily injury' means physical injury, sickness, or disease to a person. . . . [It] does not include . . . emotional distress, mental anguish, humiliation, mental distress, mental injury, or any other similar injury unless it arises out of actual physical injury to some person.

Alternatively, State Farm opined that coverage could possibly be denied under the intentional acts exclusion because "[i]t is questionable . . . [whether] the damages resulted from intentional acts caused by Selena Reames."

---

**5.** Attached to this letter were documents from Mr. Salvado's criminal case file.

**6.** State Farm indicated that it would reimburse the Reames for reasonable attorneys' fees if it ultimately decided to provide a defense.

Thereafter, Mr. Dugan undertook the defense of Ms. Reames in *Salvado v. Reames,* and on 26 January 1995 filed therein a Motion to Dismiss, Or in the Alternative, for Summary Judgment and for Sanctions. The motion to dismiss, or in the alternative, for summary judgment was granted with prejudice by the circuit court by order dated 1 March 1995.[7] Also on 26 January 1995, in response to State Farm's initial denial of coverage, appellants' personal counsel sent a letter to State Farm contesting State Farm's position regarding its duty to defend. This letter referred State Farm to *Aetna Cas. & Surety Co. v. Cochran,* 337 Md. 98, 111–12, 651 A.2d 859 (1995), wherein the Court of Appeals held that "an insured may establish a potentiality of coverage under an insurance policy through the use of extrinsic evidence." The letter stated:

> [*Cochran* held that] the insured should have the opportunity to submit additional information to show that there is a potentiality of coverage. I think the records relating to the underlying criminal case[8] demonstrate that there was no intentional conduct on the part of the insured, Selena Reames, and despite the allegations in the lawsuit it is clear he got into a fight with Selena's friend, Brian Rucker, and surely he sustained some physical injury which is a covered claim in addition to the alleged emotional injuries. I believe, therefore, this is enough 'potentiality' of coverage that warrants you having the obligation to defend this action.

On 6 February 1995, State Farm responded to this letter, stating that although it was still reviewing appellants' claim, it appeared that coverage would not apply.

On 27 February 1995, appellants' counsel sent a letter to State Farm and its local counsel, Michael J. Budow of Budow and Noble, P.C., contending in part:

---

7. The trial court, however, denied the motion for sanctions, indicating that it was a close case.

8. It is not entirely clear from the record which parts of the "records relating to the underlying criminal case" are being referenced.

[I]t seems the focus on the lack of coverage is that presently in the complaint there is no count seeking damages for bodily injury from the alleged assault and battery Ms. Reames or Brian Rucker inflicted on Mr. Salvado. I do not believe the absence of a separate count defeats coverage because the definition ... of bodily injury provides for coverage of emotional distress when 'it arises out of actual physical injury to some person.' The complaint, as it now stands alleges ... [that] '[Ms.] Ream[e]s assaulted and battered Salvado.' Again, the complaint in both substantive counts ... specifically states Salvado suffered '... other personal injuries' in addition to emotional distress.

\* \* \* \* \* \*

[Moreover] 'bodily injuries' would be synonymous with 'personal injuries.'

The letter provided further:

The potentiality of coverage test ... is established by the allegations in the complaint as supplemented by the additional information we have provided[9] in the form of pleadings in defense of the lawsuit. Moreover, we have asked you to pay for the expense of a court reporter to transcribe the trial tapes.

State Farm, however, stuck to its position that it did not have a duty to defend and on 6 March 1995 sent appellants' counsel a letter formally denying coverage and a duty to defend, stating:

[T]he allegations of the Complaint ... do not fall within the purview of coverage under the Homeowner's policy ... [as] [t]he damages alleged in this Complaint result from mali-

---

**9.** In their brief, appellants contend that "[t]hroughout the defense of the *Salvado* tort suit, ... [they] sent to the insurer, and later to outside counsel, additional letters and copies of pleadings filed in the tort suit." Appellants do not, however, make clear what letters and pleadings were sent, when they were sent, or what they proved. For the purposes of this opinion, we shall assume that all extrinsic evidence went to illustrating that "the acts of Selena Reames were unplanned, nonintentional and that Salvado [may have] sustained bodily or physical injuries during the altercation."

cious prosecution and abuse of process, neither of which meet the [policy's] definition of occurrence as outlined in the policy. However, should the insured receive an Amended Complaint, please forward it for our immediate review and consideration.

On 6 April 1995, appellants filed a complaint for a declaratory judgment against State Farm requesting a declaration that the insurer had a duty to pay all legal fees that had been incurred in defense of *Salvado v. Reames*,[10] as well as all legal fees and litigation expenses incurred in bringing the declaratory judgment action. In this complaint, appellants alleged in part that

State Farm['s decision that there was no duty to defend] . . . made no reference to . . . the extrinsic evidence offered by [appellants].

\* \* \* \* \* \*

State Farm failed to follow the applicable law, narrowly read its policy terms in declining to provide a defense to [appellants], refused to consider the potentiality of coverage based upon the words used in the complaint that had the same or equivalent meanings, refused to consider defending the case unless and until there was an amendment of the complaint, and thus required [appellants] to incur substantial legal fees and expenses to defend the lawsuit which legal services ultimately led to its dismissal with prejudice.

On 13 April 1995, appellants filed a motion for summary judgment. Attached to this motion was a partial transcript of the Salvado criminal trial testimony [11] which, according to appellants, was introduced "to supplement the extrinsic evidence already proffered . . . and to be the factual predicate showing that the acts of Selena Reames were unplanned, non-

---

**10.** Appellants contend that they incurred legal fees and expenses in defending *Salvado v. Reames* totalling $8,717.01.

**11.** We note that the circuit court made a factual finding that this testimony was available to State Farm "at the time this matter came . . . to the insurance carrier."

intentional and that Salvado sustained bodily or physical injuries during the altercation." This transcript provided in part:

[Prosecutor]: And what happened during that fight? What did you observe?

Reames: Carlos [Salvado] was mostly, he's bigger than Brian [Rucker]. I felt that I need to, I felt that I might be able to break them up, you know, stop the fighting, but instead I guess I just made things worse. He started throwing me into the door, I was on his back. . . .

[Prosecutor]: Why did you get on the defendant's back?

Reames: I wanted to break them up. Carlos, as I said, is a lot bigger than Brian. I didn't know that I could be of help, but I didn't want him to get hurt.

\*     \*     \*     \*     \*     \*

[Defense attorney]: Now, you were the one who initiated the physical contact to the extent that there was any between yourself and Mr. Salvado?

Reames: Yes, I was.

[Defense attorney]: And you jumped on his back, did you not?

Reames: I tried to pull him off Brian.

[Defense attorney]: And you put your arms around his neck, did you not?

Reames: I put my arm across his shoulder, under his arm. . . .

[Defense attorney]: So you had both hands around him, you were holding him and you were trying to bring him down, correct?

Reames: Yes I did. I was trying to bring him off of Brian Rucker.

\*     \*     \*     \*     \*     \*

[Defense attorney]: Isn't it true that she jumped on his back?

Rucker: Yeah. After he was fighting with me.

[Defense attorney]: And isn't it true that you attempted to trip Mr. Salvado and indeed did trip him using a leverage

exerted upon Mr. Salvado by Ms. Reames being on his back, correct? The two of you tag teamed him, correct?

Rucker: Yeah, I guess you could call it that.

[Defense attorney]: And isn't it true that at one point he was even knocked out by the force of the two of you being on him, correct?

Rucker: And that's when I left the room, yeah.

State Farm opposed this motion on 16 May 1995, at which time it also filed a cross-motion for summary judgment, arguing:

[It was] entitled to summary judgment ... because the allegations of the underlying Complaint clearly establish that the insurer had no duty to defend Selena Reames under the terms of the applicable insurance policy. Furthermore, [appellants] have presented no extrinsic evidence to establish the existence of a potentiality of coverage under the liability provisions of said policy.

After holding a hearing on the cross-motions for summary judgement,[12] the circuit court on 14 July 1995 rendered an oral opinion, concluding that State Farm did "not have an obligation to defend in this case; and therefore, the ... judgment will be for [State Farm]." [13] In support, the trial judge found that under the *Cochran* decision, although extrinsic evidence can be used to show the potentiality of coverage, such extrinsic evidence is limited by the causes of action that a third party actually alleged in its complaint, stating:

[T]he inquiry is whether or not the allegations of a complaint against the insured state a cause of action within the

----

12. This hearing was held on 22 June 1995. After the hearing, the circuit court took the motions under advisement.

13. On 1 August 1995, the trial court issued a declaratory judgment order in conformance with this bench ruling, declaring that State Farm "had no duty to defend Selena Reames in the case of *Salvados v. Reames* [sic] ... under the terms of [the policy]."

coverage of a liability policy ... not within what could have been brought, but within what has been brought.

The circuit court continued:

> It is clear from the way [Mr. Salvado] has alleged it that any personal injuries that he is alleging are personal injuries of a kind, like and growing out of emotional distress, which is specifically by policy excluded.
>
>     \*      \*      \*      \*      \*      \*
>
> I conclude that inasmuch as the policy defines occurrence in terms of bodily injury, and bodily injury as defined in the policy would not have been recoverable by the third party complainant based on the complaint as filed [that State Farm does not have a duty to defend].... [I]t would have been [different] if a simple third count [of assault and battery] had been involved.

The circuit court also ruled that the intentional act exclusion did not apply, based upon its finding that under a *Cochran* analysis "the extrinsic evidence [which was available to State Farm] shows self-defense as a potential." Appellants filed this timely appeal.

## DISCUSSION

### I.

■ Appellants contend under alternative theories that the tort complaint filed in *Salvado v. Reames* alleged liability that was actually or potentially within the policy's coverage, thus giving rise to a duty to defend. Appellants first argue that after analyzing the complaint, together with the submitted extrinsic evidence, the circuit court "should have held there was a duty to defend [under the potentiality rule] irrespective of the ... causes of action actually pled." [14] In support,

---

14. Stated differently, appellants assert:

> The issues raised in this appeal and the rulings at issue do not primarily deal with the construction or interpretation of policy terms. The primary issue is whether Maryland law requires that the complaint filed by the third party must state a cause of action of a covered

appellants assert that because "Maryland law looks not only to causes of action pled but also to factual allegations in determining whether there is or may potentially be a claim covered by the policy," State Farm had actual or potential notice of a claim of assault and battery, which was alleged in the factual allegations of the complaint and illustrated through the extrinsic evidence, even though such a cause of action was never actually pled.[15] As we shall explain, *infra*, because we conclude that the insurer's duty to defend a claim that is potentially covered by a policy is determined by evaluating the causes of action that were actually alleged, not those that might have been brought, as well as the relevant extrinsic evidence, this argument fails under the circumstances of the instant case.

The Court of Appeals in *Aetna Cas. & Surety Co. v. Cochran*, 337 Md. 98, 651 A.2d 859 (1995), recently discussed the pertinent law concerning when an insurance company has a duty to defend its insured under an insurance policy, recognizing:

> 'The obligation of an insurer to defend its insured under a contract provision ... is determined by the allegations in the tort action. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer must still defend if there is a *potentiality* that the claim could be covered by the policy.'

*Id.* at 102, 651 A.2d 859 (Emphasis in original) (quoting *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975)). The *Cochran* court then noted the two-step inquiry

---

claim before the insurer is required to defend; or alternatively, whether the duty to defend is triggered by the operative facts of the underlying incident that does or potentially raises a claim within the policy contract.

15. We note that appellants seem to acknowledge that Mr. Salvado's potential cause of action for assault and battery "would likely have been subject to a motion to dismiss based upon the one year statute of limitations for such claims."

used to ascertain whether an insurer has a duty to defend an insured, stating:

'In determining whether a liability insurer has a duty to provide its insured with a defense in a tort suit, two types of questions ordinarily must be answered: (1) what is the coverage and what are the defenses under the terms and requirements of the insurance policy? (2) do the allegations in the tort action potentially bring the tort claim within the policy coverage? The first question focuses upon the language and requirements of the policy, and the second question focuses upon the allegations of the tort suit.'

337 Md. at 103–04, 651 A.2d 859 (quoting *St. Paul Fire & Marine Ins. Co. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282 (1981)). As to the second step, the *Cochran* court recognized further:

'[I]n case of doubt as to whether or not the allegations of a complaint against the insured state *a cause of action*[16] within the coverage of a liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor.'

*Id.* at 107, 651 A.2d 859 (Emphasis added) (quoting *U.S.F. & G. v. Nat. Pav. Co.*, 228 Md. 40, 54, 178 A.2d 872 (1962)). The Court ultimately held "that an insured may establish a potentiality of coverage under the insurance policy through the use of extrinsic evidence." *Id.* at 111–12, 651 A.2d 859. In reaching this conclusion, the Court of Appeals cautioned:

[A]n insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer. Only if an insured demonstrates that there is a reasonable potential that the issue triggering coverage will be generated at trial can evidence to support the insured's assertion be used

---

16. We note that the cases appear to use the terms "claim" and "cause of action" interchangeably in this context. *See Fowler v. Printers II, Inc.*, 89 Md.App. 448, 485–86, 598 A.2d 794 (1991) (citing *Weber v. Unsatisfied Claim and Judgment Fund Board*, 261 Md. 457, 460–61, 276 A.2d 86 (1971)) (stating the term " 'claim' appears to be used as a term of art synonymous with 'cause of action.' ").

to establish a potentiality of coverage under an insurance policy.

*Id.* at 112, 651 A.2d 859.

In *Sullins v. Allstate Ins. Co.,* 340 Md. 503, 667 A.2d 617 (1995), Chief Judge Murphy, writing for the Court of Appeals, summarized these principles, stating:

> Our cases hold that an insurer has a duty to defend its insured if there is a potentiality that the claim may be covered by the policy; *that obligation is ordinarily determined by the allegations in the underlying tort action. If the plaintiff in the tort suit alleges a claim covered by the policy, the insurer has a duty to defend where the potentiality exists that the claim could be covered by the policy.* In this regard, to determine whether there is a potentiality of coverage, we look to the policy, the complaint, and extrinsic evidence, if any is adduced.

*Id.* at 509, 667 A.2d 617 (emphasis added) (citing *Cochran,* 337 Md. at 108, 651 A.2d 859; *Chantel Associates v. Mt. Vernon,* 338 Md. 131, 141, 656 A.2d 779 (1995); *Brohawn,* 276 Md. at 407–08, 347 A.2d 842). *See also Hartford Accident and Indemnity Co. v. Sherwood Brands, Inc.,* 111 Md.App. 94, 106, 680 A.2d 554, 560 (1996) (citation omitted) (explaining that "[t]he obligation of an insurer to defend under a CGL policy is determined by the allegations in the complaint. If the plaintiff alleges a claim covered by the policy, the insurer has a duty to defend the insured in that action."); *Washington v. State Farm Fire & Cas. Co.,* 629 A.2d 24, 26 n. 5 (D.C.App. 1993) (stating "our focus must always be on the allegations of the complaint. The duty to defend arises only when those allegations state a legal claim—since otherwise there is nothing to defend—that is within the coverage of the policy.").

■ From these cases, we glean that the analysis concerning an insurer's duty to defend a lawsuit filed against its insured on the ground that the allegations in the tort action potentially bring the tort claim within policy coverage is governed solely by evaluating the causes of action actually alleged by the plaintiff in that lawsuit, along with the relevant

extrinsic evidence. This extrinsic evidence must, however, relate in some manner to a cause of action actually alleged in the complaint and cannot be used by the insured to create a new, unasserted claim that would create a duty to defend. Unasserted causes of action that could potentially have been supported by the factual allegations or the extrinsic evidence cannot form the basis of a duty to defend because they do not demonstrate "a reasonable potential that the issue triggering coverage will be generated at trial." *Cochran*, 337 Md. at 112, 651 A.2d 859. In the instant case, because the complaint, alleging causes of action for malicious prosecution and abuse of process, along with the relevant extrinsic evidence revealing that Mr. Salvado was rendered unconscious during the alleged altercation, failed to demonstrate a reasonable potential that Ms. Reames would face a "claim" or "suit" for damages resulting from an assault and battery, we conclude that the circuit court correctly concluded that appellants could not use this, or any other unasserted cause of action,[17] as a basis for compelling State Farm to provide Ms. Reames a defense.[18]

Having determined that State Farm was not obligated to provide Ms. Reames with a defense by virtue of the factual allegations or the extrinsic evidence that could have potentially supported a cause of action for assault and battery, we must consider appellants' alternative suggestion that State Farm was obligated to provide a defense based on the complaint's asserted claims for malicious prosecution and abuse of pro-

---

**17.** In their brief, appellants assert that State Farm had notice of not only a potential claim for assault and battery, but also for negligence. To the extent that appellants attempt to argue that State Farm had a duty to defend by virtue of this unasserted cause of action, this argument fails for the same reasons provided for the potential assault and battery claim.

**18.** In support of their position, appellants direct our attention to Allan D. Windt, 1 *Insurance Claims and Disputes* § 4.01, at 156–57 (3d ed.1995), for the proposition that "it depends on the type of policy as to whether you should look at the actual claims as opposed to whether you look at factual allegations." We note, however, that this treatise states that "most courts have held that one looks at the causes of action alleged ... in determining whether a duty to defend exists." *Id.* at 157.

cess, because they met the criteria set forth in the policy's definitions. As will be explained, *infra*, because these allegations, along with the extrinsic evidence produced, did not establish a claim for "bodily injury" as defined in the policy, this argument fails also.

In ascertaining whether an insurer has a duty to defend by virtue of the terms and requirements of the policy, the Court of Appeals has explained:

> In answering [this part of the inquiry] . . . we focus on the terms of the insurance policies themselves[.] . . . In construing the terms of the insurance contract, we must accord the terms their 'customary, ordinary, and accepted meaning.'

> \*       \*       \*       \*       \*       \*

> 'An insurance contract, like any other contract, is measured by its terms unless a statute, a regulation, or public policy is violated thereby. To determine the intention of the parties to the insurance contract we construe the instrument as a whole and should examine the character of the contract, its purpose, and the facts and circumstances of the parties at the time of execution.' ·

*Cochran*, 337 Md. at 104, 651 A.2d 859 (citations omitted). Moreover, "[a] word's ordinary signification is tested by what a reasonably prudent layperson would attach to the term." *Bausch & Lomb Inc. v. Utica Mutual Ins. Co.*, 330 Md. 758, 779, 625 A.2d 1021 (1993) (citation omitted). Maryland, unlike other jurisdictions "does not follow the rule . . . that an insurance policy is to be construed most strongly against the insurer." *Id.* (citation omitted).

Under the policy at issue, State Farm promised to provide a defense for a "claim" or "suit" brought against appellants for damages because of "bodily injury" caused by an "occurrence." [19] The policy clearly defined "bodily injury" in terms

---

**19.** Although the policy also provided that appellants were entitled to a defense for a suit brought for damages because of "property damage," this portion of the policy is not implicated by the instant case.

of a physical injury and specifically excluded "emotional distress, mental anguish, humiliation, mental distress, mental injury, or any similar injury unless it arises out of actual physical injury to some person." A reasonable person reading this definition would conclude that non-physical injuries that did not arise out of an actual physical injury were excluded from coverage. Both counts of Mr. Salvado's complaint relied on facts showing that Ms. Reames provided false information to the police regarding the events that occurred at her house on the evening of 1 October 1993. These counts alleged damage to Mr. Salvado's reputation, emotional distress and turmoil, embarrassment, humiliation, "and other personal injuries," without making any reference whatsoever to any actual physical injury. Moreover, the extrinsic evidence produced did not go to proving that any of these injuries were attributable to any physical injury that Mr. Salvado may have sustained during the altercation at the Reames' family home. As a result, we conclude that the complaint's allegations of damages are the type of emotional injuries that were expressly excluded from the definition of "bodily injury," and were therefore not subject to coverage under the policy.

Appellants' argument to the contrary first focuses on their contention that Mr. Salvado's claims for emotional distress arose out of an actual physical injury. In support, appellants argue that taking into account the complaint's allegation that Mr. Salvado had been assaulted and battered by Ms. Reames, together with the extrinsic evidence that Mr. Salvado had been rendered unconscious in this altercation, there was no legal basis excusing State Farm from being responsible for the defense of the malicious prosecution and abuse of process claims. This position, however, fails to take into account that any non-physical injury alleged must have arisen out of an actual physical injury. We do not see any connection whatsoever between any physical injury that may have been sustained by Mr. Salvado as a result of the assault and battery and the non-physical injuries that allegedly resulted from the separate and distinct torts of malicious prosecution and abuse of process. Moreover, the complaint did not allege, nor did

appellants present any extrinsic evidence establishing, that Mr. Salvado suffered, as a result of his arrest and prosecution that led to the filing of the complaint for malicious prosecution and abuse of process, any physical injury from which a non-physical injury could have arisen. As a result, we shall reject this argument.

Appellants next assert that they were entitled to a defense for the claims of malicious prosecution and abuse of process based on the complaint's allegations that Mr. Salvado suffered "other personal injuries" because "the ordinary accepted meaning of the term 'bodily injury' is . . . synonymous with or has the equivalent meaning as the term 'personal injury.'" In support of their position, appellants direct our attention to a number of cases in which, under totally different circumstances, the term "bodily injury" was equated with the term "personal injury."

It is not necessary, however, in this case to consult outside sources in order to ascertain the meaning of "bodily injury" because the term is defined clearly in the policy itself. *See Cochran,* 337 Md. at 104, 651 A.2d 859 (citation omitted) (recognizing that "[a]n insurance contract . . . is measured by its terms unless a statute, a regulation, or public policy is violated thereby."). The policy provided that "'bodily injury' means physical injury, sickness or disease," and this definition clearly excluded from coverage all non-physical injuries that did not arise out of an actual physical injury. The manner in which Mr. Salvado broadly alleged "other personal injuries" in the counts for malicious prosecution and abuse of process clearly referred to other similar non-physical injuries that were contained in those counts, *i.e.,* harm to reputation and standing in the community, emotional distress and turmoil, embarrassment, and humiliation. In this regard, we agree with the lower court's finding that

> [i]t is clear from the way [Mr. Salvado] alleged it that any personal injuries he is alleging are personal injuries of a kind, like and growing out of emotional distress, which is specifically by policy excluded.

As we concluded, *supra,* because it was never sufficiently alleged, nor was it proven through extrinsic evidence, that any of these non-physical injuries arose out of an actual physical injury, the circuit court correctly found that State Farm did not have a duty to defend Ms. Reames.

## II.

Based on our holding, *supra,* that because the causes of action alleged in the complaint, along with the extrinsic evidence produced, did not establish a claim for "bodily injury" as defined in the policy the circuit court correctly found that State Farm did not have a duty to provide Ms. Reames a defense. Therefore, it is not necessary for us to address State Farm's contention that it "properly declined to provide a defense based on the intentional action exclusion . . . of the policy."

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANTS.**