WARFIELD–DORSEY COMPANY,
INC., Plaintiff,

v.

The TRAVELERS CASUALTY
& SURETY COMPANY OF
ILLINOIS, Defendant.

No. Civ. H–99–1679.

United States District Court,
D. Maryland.

Oct. 4, 1999.

Jerald J. Oppel and Ober, Kaler, Grimes & Shriver, Baltimore, MD, for plaintiff.

Matthew G. Hjortsberg and Niles, Barton & Wilmer, Baltimore, MD, and William T. Corbett, Jr. and Shanley & Fisher, PC, Morristown, NJ, for defendant.

## MEMORANDUM AND ORDER

ALEXANDER HARVEY, II, Senior District Judge.

An insured is here suing an insurer asking this Court to construe in its favor certain provisions of a commercial general liability insurance policy. Plaintiff Warfield–Dorsey Company, Inc. ("Warfield") has brought this action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a). Named as defendant is The Travelers Casualty & Surety Company of Illinois ("Travelers"), which issued the policies in question to Warfield. Diversity jurisdiction exists pursuant to 28 U.S.C. § 1332(a), and Maryland law is controlling.

With its complaint, plaintiff Warfield filed a motion for summary judgment, together with an affidavit and various exhibits. Defendant Travelers has responded by filing a cross-motion for summary judgment with a supporting affidavit and exhibits. By its cross-motion, defendant Travelers asks this Court to dismiss the complaint with prejudice and enter judgment in its favor.

There has been no discovery in this case. The parties have asked this Court to rule on their pending motions on the basis of the memoranda and exhibits which have been filed in support of and in opposition to the pending motions. A hearing on the motions has been held in open court. Following its review of the parties' submissions, the Court has concluded that plaintiff's motion for summary judgment must be treated as a motion for partial summary judgment and granted. Defendant's cross-motion for summary judgment will be denied.

## I

### Background Facts

Plaintiff Warfield is an insurance broker operating in Maryland. Travelers is an insurer which has for many years provided Warfield with commercial general liability insurance policies. Under Coverage B of its AEnterprise 2000 Property Liability Policy ("the Policy"),[1] Travelers agreed to pay Warfield those sums which Warfield became legally obligated to pay as dam-

---

1. Three separate policies were issued by Travelers to Warfield, covering the years 1995, 1996 and 1997. The pertinent provisions are identical, and all three policies will therefore be referred to herein as "the Policy."

ages because of "personal injury" or "advertising injury" to which the coverage applied.

By the terms of the Policy, Coverage B was deemed to apply to "(1) 'Personal injury' caused by an offense arising out of [Warfield's] business, excluding publishing, broadcasting or telecasting done by [Warfield];" and "(2) 'Advertising injury' caused by an offense committed in the course of advertising [Warfield's] goods, products or services." The definitions section of the Policy set out in detail the meaning of the terms "personal injury" and "advertising injury." "Personal injury" was defined, in pertinent part, as:

> injury, other than 'bodily injury,' arising out of one or more of the following offenses: ... d. Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services.

Similarly, the term "advertising injury" was defined, in pertinent part, as:

> injury arising out of one or more of the following offenses: a. Oral or written publication of material that slanders or libels a person or organization or disparages a person's organization's goods, products or services;

Coverage was excluded for certain types of "personal injury" and "advertising injury." Specifically, the Policy excluded coverage for injuries "[a]rising out of oral or written publication of material, if done by or at the direction of the 'insured' with knowledge of its falsity." Coverage was also excluded for injuries "[w]ith respect to any contract or treaty of insurance ... for which the insured may be held liable because of ... the failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise." The Policy also excluded coverage "because of ... [t]he rendering or failure to render professional services in ... [e]ffecting insurance, reinsurance or suretyship coverages ..." Finally, the Policy required that Warfield provide Travelers with prompt

written notice of any action which might trigger coverage under the Policy, thus giving Travelers the opportunity to exercise its right to control the defense of any claims under which liability might attach.

In April of 1996, Warfield entered into an agreement with The McCarthy Cos. Limited ("McCarthy"), an independent insurance agency owned and operated by Eugene F. McCarthy, Jr. When differences arose between the parties, McCarthy filed suit on October 7, 1997 against Warfield in the Circuit Court for Baltimore County (the "underlying action"). *The McCarthy Cos. Limited v. Warfield–Dorsey Company, Inc.*, No. 03–C–97–009784 (Cit.Ct. for Balto. County). Various claims were asserted against Warfield in that suit. At an early stage of the litigation, a trial date of August 3, 1999 was set by the Court.

On January 27, 1999, plaintiff Warfield provided Travelers with a copy of the complaint in the underlying action and requested that Travelers defend the claims asserted by McCarthy pursuant to provisions of the Policy. On April 19, 1999, Travelers denied coverage. The suit brought by McCarthy never went to trial but was settled on July 1, 1999.

In its complaint, plaintiff Warfield seeks an Order declaring that coverage exists under the Policy. As relief, plaintiff's complaint specifically requests that the declaratory judgment entered by the Court provide that Travelers has a duty to defend the claims raised against Warfield by McCarthy and pay any sums for which Warfield may be found "libel" [*sic*] under the allegations of McCarthy's suit.

## II

### *Applicable Principles of Law*

The principles to be applied by this Court in considering a motion for summary judgment under Rule 56, F.R.Civ.P., are well established. A party moving for summary judgment bears the burden of

showing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. *Barwick v. Celotex Corp.*, 736 F.2d 946, 958 (4th Cir. 1984). This burden is met by consideration of affidavits, exhibits and other evidentiary materials. *Id.*

██ In Maryland, an insurance policy is a contract and is to be read as any other contract. *Little v. First Federated Life Ins. Co.*, 267 Md. 1, 5, 296 A.2d 372 (1972). The words of an insurance policy are to be given their ordinary meaning. *C & H Plumbing and Heating, Inc. v. Employers Mut. Cas. Co.*, 264 Md. 510, 511–12, 287 A.2d 238 (1972).

██ When deciding the issue of coverage under an insurance policy, the primary principle of construction is to apply the terms of the insurance contract itself. *Bausch & Lomb v. Utica Mutual*, 330 Md. 758, 779, 625 A.2d 1021 (1993). Maryland does not follow the rule, adopted in many jurisdictions, that an insurance policy is to be construed most strongly against the insurer. *Cheney v. Bell National Life*, 315 Md. 761, 766, 556 A.2d 1135 (1989). Rather, following the rule applicable to the construction of contracts generally, the parties' intention should be ascertained if reasonably possible from the policy as a whole. *Id.* at 767, 556 A.2d 1135.

██ The obligation of an insurer to defend its insured under a liability policy is typically established by the allegations made in the underlying action against the insured. *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 407–08, 347 A.2d 842 (1975). However, an insurer has an affirmative obligation to defend when there exists a "potentiality that the claim could be covered under the policy." *Litz v.*

*State Farm Fire and Cas. Co.*, 346 Md. 217, 225, 695 A.2d 566 (1997). Thus, the allegations of the complaint in the underlying action must be viewed broadly, encompassing not only the four corners of the complaint, but also any extrinsic evidence which would allow the insured to establish the potentiality of coverage. *Aetna Casualty & Surety Co. v. Cochran*, 337 Md. 98, 108–109, 651 A.2d 859 (1995); *Litz*, 346 Md. at 226, 695 A.2d 566.

## III

### *Discussion*

### (a)

### *Duty to Indemnify*

Although in its complaint plaintiff Warfield has requested the Court to determine that defendant Travelers had both a duty to defend Warfield in the underlying action and a duty to indemnify Warfield for amounts paid in settlement of that action, it is apparent from a review of plaintiff's motion and memoranda that plaintiff in seeking summary judgment has addressed only defendant's alleged duty to defend.[2] Indeed, in opposing plaintiff's motion, defendant has treated it as presenting only a duty to defend issue.[3]

██ An insurer's duty to defend the insured is broader than its duty to indemnify. *Litz*, 346 Md. at 225, 695 A.2d 566. As noted by the Court of Appeals in *Litz*, " 'any potentiality of coverage no matter how slight, gives rise to the duty to defend.' " *Id.* at 226, 695 A.2d 566 (citation omitted). Under the potentiality rule, an insurer will be obligated to defend more cases than it will be required to indemnify because the mere possibility that the insurer will have to indemnify triggers the

---

2. In a post-hearing submission, counsel for plaintiff erroneously argues that, if the duty to defend issue is decided in plaintiff's favor, defendant also has a duty to indemnify plaintiff for sums paid in settling the underlying action. As discussed herein, this contention ignores applicable authority and is clearly wrong.

3. In its original memorandum, plaintiff merely argued that coverage for damages exists under the Policy without citing any cases discussing an insurer's duty to indemnify under a policy like the one at issue in this case.

686

duty to defend. *Id.* at 225, 695 A.2d 566. As the Court of Special Appeals noted in *Fireman's Fund Ins. Co. v. Rairigh*, 59 Md.App. 305, 317, 475 A.2d 509 (1984) (quoting A.D. Windt, *Insurance Claims and Disputes*, § 4.35 (1982)), "an insurer's unjustified refusal to defend does not estop it from later denying coverage under its duty to indemnify." When a suit alleging a tort claim has been brought against the insured, the damages which the insured is "legally obligated to pay" within the meaning of the coverage language are those determined by the judgment in or settlement of the tort claim. *Allstate Ins. Co. v. Atwood*, 319 Md. 247, 261, 572 A.2d 154 (1990).

All but one of the cases cited by defendant in opposing plaintiff's motion are duty to defend cases. All but one of the authorities relied upon by plaintiff likewise involve only the duty to defend issue. In *Bankwest v. Fidelity & Deposit Co. of Md.*, 63 F.3d 974 (10th Cir.1995), the Tenth Circuit held that under the policy at issue in the case the insurer had a duty to defend the insured in the underlying lawsuit. *Id.* at 981. However, considering the question whether defendant was also obligated to indemnify the plaintiff, the Court concluded that further development of the record was necessary. *Id.* The Tenth Circuit accordingly remanded the case to the district court for determination of the question whether any of the settlement proceeds paid in the underlying action constituted payment of a claim of intentional interference with contractual and business relations, as alleged in that action. *Id.* at 981–2.

█ The existence of an insurer's duty to defend can be determined by considering the allegations of the complaint in the underlying case and the language of the liability policy. Particularly in a case where all of the claims in the underlying action have been settled but only some of them qualify for coverage, many more factors must be considered by a court in determining whether the insurer has a

duty to indemnify the insured for all or part of the amounts paid in settlement. *Employers Mutual Liability Ins. Co. of Wisconsin v. Hendrix*, 199 F.2d 53 (4th Cir.1952). In that case, the insured had brought suit against his insurer to recover the sum of $20,000 plus fees paid by the insured in compromise of claims for damages for assault and battery which were covered under the policy, and slander, which was not covered. *Id.* at 54. Recognizing the familiar practice for defendants of financial responsibility to settle a case taking into account the inclination of juries to award compensation to injured parties, the Court held that in every case of settlement before judgment where the insurer has failed to meet its duty to defend, "the *reasonableness of the compromise* is a proper subject of inquiry which cannot be answered without some examination into the merits of the [underlying] claim." *Id.* at 60 (emphasis added). The court also noted:

> It is manifest that the sum ... paid in settlement of the [several causes of action] cannot be charged in its entirety against the Insurance Company because the payment covered [several] causes of action, ... without apportionment between them, and only the first cause of action was covered by the policy [while the other cause of action] ... was not within the terms of the contract.

*Id.* at 59.

This inability to apportion the settlement led the Fourth Circuit in *Hendrix* to rule that no judgment against the insurer for indemnification could be had until it was determined what part of the settlement sum was paid for the covered cause of action. *Id.* Although no more recent Fourth Circuit cases have addressed this issue, the Third Circuit has considered the requirements which must be met by an insured in a case presenting a duty to indemnify issue where there has been a settlement of the underlying action. In *Luria Brothers & Co., Inc. v. Alliance*

*Assurance Co., Ltd.,* 780 F.2d 1082, 1091 (2d Cir.1986), the Court stated:

> [i]n order to recover the amount of the settlement from the insurer, the insured need not establish actual liability to the party to whom it has settled "so long as a potential liability on the facts known to the [insured is] shown to exist, culminating in a settlement in an amount reasonable in view of the size of possible recovery and degree of probability of claimant's success against the [insured]."

*Id.* (citation omitted).

More recently in *Vargas v. Hudson County Board of Elections, et al.,* 949 F.2d 665, 674 (3d Cir.1991), the Court held that:

> [i]n deciding whether a settlement is prudent and reasonable, a court must consider the risk to the settling parties. It is the extent of the defendants' exposure to liability and not mere allegations in the plaintiffs' complaint that govern the appraisal of reasonableness.

*Id.*

Neither in its original memorandum nor in its reply memorandum does plaintiff Warfield specifically address the claim in its complaint that Travelers had a duty to indemnify it for the sums paid by it in settlement of McCarthy's claims. All of its arguments are based on the contention that McCarthy's allegations in the underlying action created a potentiality of coverage giving rise to a duty to defend. Under the circumstances here, this Court concludes that the issue of defendant's duty to indemnify is not now before it for decision.[4] In *Sheets v. Brethren Mutual,* 342 Md. 634, 638, 679 A.2d 540 (1996), the Maryland Court of Appeals similarly concluded that it could not determine on the record before it whether the insurer had a duty to indemnify the insured and discussed in its opinion only the insured's

duty to defend and not its duty to indemnify. Plaintiff's motion will therefore be treated as a motion for partial summary judgment requesting determination by this Court only that defendant Travelers had a duty to defend plaintiff Warfield in the underlying action.

### (b)

### *Duty to Defend*

██ In the underlying action, McCarthy asserted four claims as follows: Count One—breach of contract; Count Two—interference with economic relations and/or prospective advantage; Count Three—breach of covenant of good faith and fair dealing; and Count Four—unjust enrichment.[5] In support of its claims, McCarthy relied on various acts and statements of Warfield. It was alleged that Warfield told a person who contemplated working for McCarthy that "it would not be wise to work for [McCarthy] because [McCarthy] would be out of business in six months." It was further alleged that Warfield "told an entity with whom [McCarthy was] trying to develop a business relationship that [Warfield was] continuing to withhold [McCarthy's] commissions because of" a difficult business relationship between McCarthy and a former employer. It was also alleged that Warfield had falsely represented in a letter to certain of McCarthy's clients "that [McCarthy] never had a broker or other relationship through which [McCarthy] could place insurance for its clients in the first instance" and that Warfield "sent a letter to [one of McCarthy's clients] stating that its policies would not be renewed through [Warfield] and that the client needed to get a new agent, implying that ... [McCarthy could not] handle the business."

██ When the pertinent principles of law are applied to the facts of record

---

**4.** Even if that issue were now before the Court, it could not be decided on the present record by way of the pending cross-motions for summary judgment. Disputed questions of material fact exist.

**5.** In Count Five, McCarthy requested injunctive relief.

here, this Court concludes that under the Policy defendant Travelers had a duty to defend plaintiff Warfield in the underlying action. Viewing the allegations in the underlying action broadly, this Court is satisfied that a potentiality of coverage exists. The underlying suit need only allege action that is potentially covered by the policy, "no matter how attenuated, frivolous, or illogical" such allegations may be. *Sheets,* 342 Md. at 643, 679 A.2d 540. Any doubt as to whether there is a potentiality of coverage under an insurance policy is to be resolved in favor of the insured. *Chantel Associates v. Mount Vernon Fire Ins. Co.,* 338 Md. 131, 145, 656 A.2d 779 (1995). If some of the claims against an insured fall within the terms of coverage, and some without, the insurer must still defend the entire claim. *Hartford Accident v. Sherwood,* 111 Md.App. 94, 107, 680 A.2d 554 (1996), *vacated on other grounds,* 347 Md. 32, 698 A.2d 1078 (1997) (citing *Titan Holdings Syndicate v. Keene,* 898 F.2d 265, 269 (1st Cir.1990)). Facts of record in this case indicate that there is a potentiality that the claims alleged in the underlying suit could be covered by the Policy, and Travelers' duty to defend is triggered by the existence of such potentiality. *Brohawn,* 276 Md. at 407–08, 347 A.2d 842.

▪ As plaintiff has now conceded, defendant's duty to defend can arise here only under the personal injury definition of the Policy. No "advertising injury" occurred as that term was defined. However, the allegations of the underlying complaint present the potentiality that the "personal injury" sustained by McCarthy arose out of oral or written publication of material that disparaged services rendered by McCarthy. Defendant argues that it had no duty to defend plaintiff because none of the counts included in McCarthy's complaint alleged claims of libel, slander or disparagement. However, McCarthy did assert a claim of interference with economic relations and/or prospective advantage.[6] The various disparaging remarks allegedly made by Warfield relate to and support this tort claim contained in McCarthy's complaint. In a letter to plaintiff's attorney dated March 4, 1999, McCarthy's attorney stated that among Warfield's actions constituting wrongful interference with McCarthy's business was its act of advising insurers in writing that McCarthy did not have and never had any authority to broker business through Warfield. Under all the circumstances here, Travelers had a duty to defend even though there were no separate claims of slander, libel and alleged disparagement in the McCarthy complaint.

Cases from other jurisdictions support the conclusion reached by this Court in this case. In *United Wats, Inc. v. Cincinnati Ins. Co.,* 971 F.Supp. 1375, 1384 (D.Kan.1997), the Court held that language which was identical to that involved in this case obligated the insurer to defend the claim of tortious interference with contract/business relations even though the complaint in the underlying action contained claims which were not covered by the Policy. The Court noted that allegations in the underlying suit clearly articulated that insured "had interfered with its contractual rights and business relations by publishing false statements to customers." Similarly, in *Bankwest,* the Tenth Circuit construed language of an insurance policy which provided coverage for the "offense" of "publication or utterance of a libel or slander or of other defamatory or disparaging material." The Court held that such language imposed a duty on the insurer to defend the insured bank against claims of intentional interference with business relationships and contracts asserted by customers in the underlying suit. *Id.* at 979–980. *See also City of Cape May v. St. Paul Fire & Marine Ins. Co.,* 216 N.J.Super. 697, 524 A.2d 882 (App.Div.

---

**6.** There is no merit to defendant's contention that this tort claim was barred by limitations. A three year limitations period applied to the tort claim alleged in the underlying action. *See* Md.Cts. & Jud.Proc.Code Ann. § 5–101.

1987); *Commercial Union Assur. Co. v. Merrill,* 6 F.Supp.2d 439, 442 (D.Virgin Islands 1998).

Defendant's reliance on *Reames v. State Farm Fire & Casualty Ins.,* 111 Md.App. 546, 683 A.2d 179 (1996) is misplaced. The claimant in the underlying suit in that case had filed a two count complaint seeking damages for malicious prosecution and abusive process. The policy at issue covered only claims for bodily injury and specifically excluded claims seeking damages for emotional distress, mental anguish and similar injuries. Since the counts of the underlying suit sought a recovery only for emotional distress and similar injuries without reference to actual physical injury, the Court held that the insurer had no duty to provide the insured a defense. *Id.* at 565, 683 A.2d 179. The Court concluded that the allegations of damages contained in the complaint in the underlying suit were the type of emotional injuries that were "expressly excluded" from the definition of "bodily injury" and were therefore not subject to coverage under the policy. *Id.* at 563, 683 A.2d 179. The Court found "no connection whatsoever" between any physical injury that may have been sustained by the plaintiff in the underlying suit as a result of his assault and battery allegations and the non-physical injuries which allegedly resulted from the separate and distinct torts of malicious prosecution and abuse of process. *Id.* In this case, there is a clear connection between the disparaging remarks allegedly made by Warfield and McCarthy's claim of tortious interference with economic relations and/or prospective advantage.

*Wake Stone Corp. v. Aetna Cas. & Sur. Co.,* 995 F.Supp. 612 (E.D.N.C.1998) is likewise distinguishable. In that case, the insured claimed only that the insurer had a duty to indemnify it for the settlement of an unfair trade practices action brought by the insured's competitor. No duty to defend issue was presented. In holding that the insurer had no duty to indemnify the insured under the facts of that case, the Court applied North Carolina law. *Id.* at 615. In this case, Maryland law is control-

ling, and the issue before this Court is whether defendant Travelers had a duty to defend plaintiff Warfield.

### (c)

### *Exclusions*

In opposing plaintiff's motion and in support of its cross-motion for summary judgment, defendant Travelers contends that exclusions in the Policy bar coverage for the underlying action brought by McCarthy. Reliance is placed on the knowledge of falsity exclusion, on the insurance and related operations exclusion and on the rendering or failure to render professional services exclusion.

The Policy excludes coverage for "personal injury" which arises "out of oral or written publication of material, if done by or at the direction of the insured with knowledge of its falsity." Under Maryland law, the burden rests on an insurer to establish the applicability of a particular exclusion from coverage. *Finci v. American Casualty,* 323 Md. 358, 394, 593 A.2d 1069 (1991). On the record here, this Court concludes that defendant Travelers has not satisfied that burden. Evidence does not exist indicating that Warfield had knowledge of the falsity of the statements attributed to it by McCarthy in its complaint in the underlying case. Defendant relies on allegations in that complaint that Warfield acted knowingly and deliberately. However, the complaint also alleges that Warfield acted recklessly. Allegations of this sort are not sufficient to permit an insurer to meet its burden of showing that the intentional acts exclusion eliminates its duty to defend. *Fuisz v. Selective Insurance Company of America,* 61 F.3d 238, 245 (4th Cir.1995).

Defendant also argues that the insurance and related operations exclusion precludes coverage because the allegations in McCarthy's complaint involve plaintiff's "failure to discharge, or the improper discharge of, any obligation or duty, contractual or otherwise," with respect to a contract of insurance. There is no merit to

this contention. A review of McCarthy's complaint indicates that none of the allegations can be considered as charging Warfield with failing to discharge or improperly discharging an obligation or duty respecting a contract of insurance. Moreover, the allegations in question do not permit Travelers to rely on the exclusion which bars coverage for liability arising out of "rendering or failure to render professional services" in effecting insurance. The claims asserted by McCarthy in the underlying action do not fall within the scope of this "professional services" exclusion.

For all these reasons, this Court concludes that none of the exclusions relied upon by defendant Travelers relieved Travelers of its duty under the Policy to defend Warfield in the underlying action.

(d)

*Timely Notice*

█ McCarthy filed its suit in the Circuit Court for Baltimore County on October 7, 1997. It was not until January 27, 1999, more than fifteen months later, that Warfield notified Travelers of the suit and requested that Travelers provide coverage. Under the Policy, Warfield was required to give Travelers "prompt written notice" of the suit filed by Warfield in order to trigger coverage.

█ Under Maryland law, the Court must determine two issues in a case involving an insurer's contention that its insured has forfeited coverage based on a failure to provide timely notice of the claim, namely (1) whether the delay was, under all the surrounding circumstances, a reasonable one; (2) whether the insurer suffered any prejudice. *General Acc. Ins. Co. v. Scott,* 107 Md.App. 603, 613, 669 A.2d 773 (1996). If the delay is found to be unreasonable, the insurer may avoid coverage only if it proves by a preponderance of the evidence that it suffered prejudice from the delay. *Id.*

█ On the record here, this Court concludes that defendant Travelers has not met its burden of showing that the delay in notice here resulted in actual prejudice. More than possible or theoretical prejudice must be shown. *Scott,* 107 Md.App. at 615, 669 A.2d 773. Prejudice cannot be presumed from the length of the delay.[7] *Id.* plaintiff here provided defendant with notice of the claim well before significant discovery in the underlying action had been undertaken. Notice was given by Warfield some six months before the assigned trial date, some five months before the case was settled, and some three months before the close of discovery. Documents were being produced by the parties during discovery in February and March of 1999, and none of the fourteen depositions contemplated by McCarthy had as yet been taken by early March. Notice of Warfield's claim of coverage was given to Travelers on January 27, 1999, but Travelers waited for almost three months until April 19, 1999 to deny coverage.

Under all these circumstances, this Court concludes that defendant's duty to defend plaintiff was not barred because of the failure of plaintiff to give defendant timely notice of the filing of the underlying action.

IV

*Conclusion*

For all the reasons stated herein, this Court concludes that there is on the record here a potentiality that the claim of plaintiff Warfield could be covered under Travelers' Policy. Travelers therefore had a duty to defend the action brought against Warfield by McCarthy in the Circuit Court for Baltimore County. The Court has not herein addressed the further question whether defendant Travelers also had a duty to indemnify plaintiff Warfield for the amount paid in settlement of the underlying action. That question will be addressed in further proceedings to be held in this case.

7. The *Scott* case involved a 29 month delay in the giving of notice.

Plaintiff's motion for summary judgment will therefore be treated as a motion for partial summary judgment. Since plaintiff's motion for partial summary judgment is being granted, defendant's cross-motion for summary judgment must be denied as to the duty to defend issue. Defendant's cross-motion for summary judgment will also be denied as to the duty to indemnify issue. There are disputed questions of material fact concerning whether Travelers had a duty under the Policy to reimburse Warfield for the amounts paid by it in settling the McCarthy suit.

Accordingly, it is this 4th day of October, 1999 by the United States District Court for the District of Maryland,

ORDERED:

1. That the motion for summary judgment of plaintiff Warfield–Dorsey Company, Inc., treated herein as a motion for partial summary judgment, is hereby granted;

2. That the cross-motion for summary judgment of defendant The Travelers Casualty & Surety Company of Illinois is hereby denied in its entirety; and

3. That the Court hereby declares that defendant Travelers had the duty to defend plaintiff Warfield in *McCarthy Cos. Limited v. Warfield–Dorsey Company, Inc.*, Case No.03–C–97–009784, an action brought in the Circuit Court for Baltimore County.