552 A.2d 1340

**Enrique Guillermo MATTA**

v.

**BOARD OF EDUCATION OF PRINCE GEORGE'S COUNTY, et al.**

**No. 746, Sept. Term, 1988.**

Court of Special Appeals of Maryland.

Feb. 6, 1989.

Thomas Patrick Ryan (Charles E. Wilson, Jr., D. Elizabeth Walker and McCarthy, Wilson & Ethridge, on the brief), Rockville, for appellant.

Donald Edward Ansell (Tammy L. Kaiser and Don Edward Ansell and Associates on the brief), Upper Marlboro, for appellee, Flanagan.

Andrew W. Nussbaum (Andrew W. Nussbaum and Reichelt, Nussbaum, Brown, Dukes & LaPlaca, on the brief, Greenbelt, for appellee, Board of Educ.

Argued before GILBERT, C.J., and WILNER and ROSALYN B. BELL, JJ.

WILNER, Judge.

Three female students at the Surrattsville High School, through their respective mothers, brought suit in the Circuit Court for Prince George's County against Prince George's County, the county Board of Education, the county Superintendent of Schools, the principal of the Surrattsville High School, and a teacher at the high school, Enrique Matta. The gravamen of all three actions, which were combined in one complaint, was that Mr. Matta took, tried to take, or communicated a desire to take certain sexual liberties with the complaining students. Each child sought

compensatory damages of $250,000 and punitive damages of $500,000.

Md.Educ.Code Ann. § 4–105 provides, in relevant part, that a county board of education "shall carry comprehensive liability insurance to protect the board and its agents and employees" and that a board may fulfill that obligation by becoming "self-insured for at least $100,000 for each occurrence under the rules and regulations adopted by the State Insurance Commissioner...." If a board elects to self-insure, it must file the "terms and conditions of the self-insurance" with the State Insurance Commissioner. Those terms and conditions "shall conform with the terms and conditions of comprehensive liability insurance policies available in the private market" and are subject to the Commissioner's approval.

Section 4–104(d)(1) of the Education article further requires, in relevant part, that

"[i]n any suit ... brought against a principal, teacher ... or other agent or employee of a county board by a parent or other claimant with respect to an action taken by the agent or employee, the board shall provide counsel for that individual if:

(i) The action was taken in the performance of his duties, within the scope of his employment, and without malice; and

(ii) The board determines that he was acting within his authorized official capacity in the incident."

The Prince George's County Board of Education is self-insured. Although it undertook to defend itself, the superintendent, and the principal in the suit filed by the students, the board declined to defend Matta or to provide him with counsel, apparently on the theory that the conduct charged to him was intentional and malicious rather than merely negligent, and thus was unauthorized and beyond the scope of his employment. Matta thereupon filed this declaratory judgment action against the board, the superintendent, the principal, and the three plaintiff-students, seeking a declara-

tion that Matta "was an insured covered by the policy of self-insurance issued by the [board of education]" and that the board owes Matta a defense in the tort action. No particular relief was requested against any of the other parties. With the complaint was a motion for summary judgment.

The board, the superintendent, and the principal (to whom we shall henceforth collectively refer as the board) filed an answer to the complaint and, eventually, a cross-motion for summary judgment. There were no exhibits or affidavits attached to the motions. After a brief hearing, the court granted the board's cross-motion and entered a judgment declaring that the board was not obligated to provide either a defense or insurance coverage for Mr. Matta. From that order, Mr. Matta has appealed.[1]

Matta's argument is based principally on the rules laid down in *Brohawn v. Transamerica Ins. Co.*, 276 Md. 396, 347 A.2d 842 (1975). In that case, as the result of an altercation in which Brohawn allegedly struck Shaffer and Friend, Brohawn was sued for both assault and negligence. Brohawn was insured by Transamerica; the policy obliged Transamerica to defend "any suit" against Brohawn alleging bodily injury, even if the allegations of the suit "are groundless, false or fraudulent," but it specifically excluded from coverage acts committed by Brohawn "with intent to

---

1. As noted, the three student-plaintiffs were named as additional defendants in this case. Although they were apparently served through their counsel, they filed no answer or other pleading and took no part in the proceedings below. Their attorney was present at the hearing on the motions for summary judgment, but he represented to the court that he was "not involved" and merely wanted to "have somebody here to hear what goes on." Nevertheless, the students regard themselves as parties to this appeal and have filed an *appellees'* brief in which they join with Matta in urging that the board *does* owe Matta a defense and coverage. We have some considerable doubt whether, under the circumstances, they have any right to complain about the judgment entered below; certainly, they cannot properly cast themselves as appellees if they are supporting the position of appellant Matta. Their brief is improper, and we shall therefore strike it, at their expense.

cause injury. . . ." Based in part on the allegations in the lawsuit by Shaffer and Friend and in part on the fact that Brohawn had pled guilty to a charge of assault flowing from the incident, Transamerica denied coverage and filed an action, prior to resolution of the tort case, seeking a declaratory judgment that it was not obliged to defend or indemnify Brohawn.

The Court of Appeals addressed two issues: (1) was a declaratory judgment action, in advance of a resolution of the tort case,. an appropriate way to resolve the coverage dispute and (2) was there coverage?

The answer to the first question, the Court held, depended on whether the coverage question was "independent and separable from the claims asserted in [the] pending suit" by the injured party. 276 Md. at 405, 347 A.2d 842. Where, for example, the asserted lack of coverage arises from the insured's failure to pay premiums on the policy or "to comply with contract provisions such as the cooperation or notification clause," a declaratory judgment prior to trial of the tort case "would ordinarily be appropriate and should be granted." *Id.* But where the coverage issue hinges on questions "which would be fully decided in pending tort actions," such a proceeding is not appropriate. *Id.* at 405–06, 347 A.2d 842.

As to the second question, the court opined, at 407–08, 347 A.2d 842:

"The obligation of an insurer to defend its insured under a contract provision such as here involved is determined by the allegations in the tort actions. If the plaintiffs in the tort suits allege a claim covered by the policy, the insurer has a duty to defend. Even if a tort plaintiff does not allege facts which clearly bring the claim within or without the policy coverage, the insurer still must defend if there is a *potentiality* that the claim could be covered by the policy."

(Emphasis in original.)

Because the tort action contained a claim of negligence and negligence was covered under the policy, the Court held

that the insurer had a duty to defend, even if the negligence claim was "groundless, false or fraudulent," for that is what the contract provided.

Matta seeks the same conclusion here. He urges that the tort action alleges negligence on his part and that there is at least a potentiality of coverage, even if the averment of negligence is "groundless, false or fraudulent."

There is a significant flaw in Matta's argument. In *Brohawn*, and in the line of cases following *Brohawn*, the Court was construing an insurance policy—a contract containing specific language delineating the insurer's obligations. Throughout the *Brohawn* Opinion, the Court made clear that the issue, in terms of coverage, arose from the insurer's "contractual obligation" or the insured's "contractual right." *See also St. Paul Fire & Mar. Ins. v. Pryseski*, 292 Md. 187, 193, 438 A.2d 282 (1981); *cf. Continental Casualty v. Board of Educ.*, 302 Md. 516, 489 A.2d 536 (1985); *Allstate Ins. Co. v. Atwood*, 71 Md.App. 107, 523 A.2d 1066, *cert. qranted* 310 Md. 274, 528 A.2d 1286 (1987); *Harpy v. Nationwide Mutual Fire Ins.*, 76 Md.App. 474, 545 A.2d 718 (1988). There is no contract here. Whatever obligation the board has and, conversely, whatever right Matta has, must be drawn initially from the statute— §§ 4–104 and 4–105—and then from the terms of the self-insurance. Although the analytical framework of *Brohawn* remains applicable—i.e., an examination of the tort action complaint to see if there is a potentiality of coverage—that potentiality must be drawn from the terms of the self-insurance authorized by the statute, not from the *Brohawn* Court's construction of the Transamerica insurance policy.

We made this same point in *Washington Transit Authority v. Bullock*, 68 Md.App. 20, 509 A.2d 1217, *cert. denied* 308 Md. 237, 238 (1986). There too we were dealing with a public entity that, under statutory authorization, had self-insured. And there, as here, although the statute set forth certain standards for the self-insurance, the record was barren as to what exactly the entity undertook to insure. Because there was no evidence as to what coverage was

afforded by the self-insurance, we concluded that the case could not properly be decided on that record. We have somewhat the same problem here.

As we indicated earlier, § 4–105(c) requires self-insurance to be in a minimum of $100,000 "under the rules and regulations adopted by the Insurance Commissioner." The board must file with the Commissioner the "terms and conditions of the self-insurance." Those terms and conditions are subject to the approval of the Commissioner and must "conform with the terms and conditions of comprehensive liability insurance policies available in the private market."

The record before the circuit court and before us does not contain (1) the rules and regulations of the Commissioner, (2) the terms and conditions of the self-insurance, (3) any indication of whether those terms and conditions were approved by the Commissioner, or (4) the terms and conditions of comprehensive liability policies available in the private market.[2] Thus, as in *Bullock*, we have no idea, and we refuse to speculate, as to what conduct was covered or excluded by the board's self-insurance. We therefore cannot tell whether the conduct charged to Matta is, or is not, potentially covered. As the moving party, the board had the burden under Md. Rule 2–501 of showing that there was no genuine dispute of material fact and that it was entitled to judgment as a matter of law. On this record, it cannot be said to have met that burden. Summary judgment in anyone's favor on the issue of coverage was clearly inappropriate.

---

**2.** Matta has gratuitously, and improperly, included in his record extract a copy of an "NEA Educators Employment Liability Policy" underwritten by Horace Mann Insurance Company. There is no indication that that policy has anything to do with this case. More importantly, the policy is not in the record and for that reason alone should not have been placed in the record extract. *See* Md. Rule 8–501(c)—"The record extract shall contain all parts *of the record* that are reasonably necessary...." (Emphasis added.)

The issue of providing counsel involves different considerations. That duty arises from § 4–104(d) and hinges on whether the alleged conduct on Matta's part "was taken in the performance of his duties, within the scope of his employment, and without malice" and whether "he was acting within his authorized official capacity in the incident." [3] Those standards represent the analog to the contractual obligations considered in *Brohawn*, and the averments in the tort action complaint can be examined in their light. Unlike the matter of coverage, therefore, the record does permit a review of this issue.

The relevant pleading, for purposes of this case, is the student-plaintiffs' third amended complaint. The actions pled by the plaintiff Flanagan were contained in Counts 1 (Battery), 2 (Assault), 3 (Intentional Infliction of Emotional Distress), and 6 (Negligence). In Count 1, Ms. Flanagan alleged that, during the course of Matta's employment with the board, he failed to conform his conduct to acceptable standards by "intentionally placing his hands upon her body against her will and without her consent in an offensive manner." In Count 2, she claimed that, in his capacity as an employee of the board, Matta threatened or attempted to commit a battery "by an unlawful and offensive touching of the body of Plaintiff" and that, on an earlier occasion, he had suggested to Ms. Flanagan "that she engage in an intimate relationship" with him. In Count 3, Ms. Flanagan alleged that Matta had caused her emotional distress by "commenting personally upon the attractiveness of her and commenting offensively about [her] body ... and further by suggested that [she] become the girlfriend of the said Defendant ... and further suggesting that she joint [sic] him in sexual bedside activities." These acts, she claimed, were performed during the course of his employment and during his "tenure and active work hours...."

---

3. Whether the board has assumed any duty in its self-insurance beyond that imposed by § 4–104(d) is not before us. Matta has not claimed any such voluntarily assumed duty.

Count 6 is the critical count with respect to Ms. Flanagan; it is the one captioned "Negligence." Ms. Flanagan begins by incorporating the averments in Counts 1–5 (although Counts 4 and 5 pertain to another plaintiff). She asserts that Matta owed a duty of care to her which he breached "by making obscene and lewd remarks of a sexual nature and placing or attempting to place his hands on the person of the said Plaintiff." These acts, she alleged, "were vicious and aimed personally at the Plaintiff ... without any justification or excuse and knowing said conduct would cause problems to the minor child of tender years."[4] They were committed, she continued, during the course of Matta's employment with the board.

Ms. Marshall's case comprised Counts 4 (Intentional Infliction of Emotional Distress) and 7 (Negligence). In Count 4, she repeated essentially what Ms. Flanagan charged in Count 3—that, during the course of his employment, Matta acted in an unlawful and outrageous manner by suggesting that Ms. Marshall become his "girlfriend" and "join him in sexual bedside activities." She incorporated those averments by reference in Count 7, where she added that Matta had breached a duty of care to her by "making obscene and lewd remarks of a sexual nature to the person of the Plaintiff," inviting her to his home "to engage in the consumption of Baccardi Rum and coke," and, on one occasion, touching her buttocks and grabbing "the long tail of her costume." These acts, she claimed, were "vicious and aimed personally at [her] without any justification or excuse and knowing said conduct would cause problems to the minor child of tender years."

Ms. Sisk also claimed an intentional infliction of emotional distress (Count 5) and negligence (Count 8). Count 5 was essentially an iteration of Count 4—"commenting personal-

---

4. Ms. Flanagan does not allege her actual age—only that she was a high school student. The other student-plaintiffs made the same allegation in their negligence actions.

ly" on Ms. Sisk's attractiveness, "commenting offensively" about her body, suggesting that she become his "girlfriend" and "that she join him in sexual bedside activities." Those averments were also incorporated by reference into Count 8, where she claimed that Matta breached a duty to her "by making obscene and lewd remarks of a sexual nature." As did Ms. Flanagan and Ms. Marshall, Ms. Sisk averred that these acts were "vicious and aimed personally at [her] without any justification or excuse and knowing said conduct would cause problems to the minor child of tender years."

█ As to all of this conduct—whether specifically stated or incorporated by reference in the "negligence" counts— the plaintiffs do allege that it was committed during and within the scope of Matta's employment. But there are two reasons why, we think, even those averments would not suffice to require the board to provide counsel to Matta. First, unlike the alternative pleading attempted in *Brohawn*, where the same conduct was alleged to be either intentional or negligent, Counts 6, 7, and 8 here, though nominally captioned "Negligence," very clearly and unmistakably characterize the conduct not only as intentional but "vicious," "aimed personally" at the plaintiffs, and "without any justification or excuse." That is tantamount to a claim of malice and it pervades the entire cause of action. Nowhere is there any suggestion that the conduct was merely negligent, that it was non-malicious. *Cf. Harpy v. Nationwide Mutual Fire Ins., supra,* 76 Md.App. 474, 545 A.2d 718. Under § 4–104(d)(i), to entitle Matta to board-provided counsel, the conduct must be "without malice." There is certainly no allegation that Matta's conduct was without malice.

More importantly, the second condition stated in § 4–104(d) is that the board determine that Matta was acting "within his authorized official capacity in the incident." Obviously, the board made no such determination.

Nor, under the averments in the complaint, could it reasonably make such a determination. Although the board, the superintendent, and the principal were all charged with failing to exercise proper control and supervision of Matta, there is no allegation that any of them authorized Matta to engage in the conduct charged to him. Nor, in our judgment,.is it even potentially possible for any court or reasonable jury to conclude that teachers are "authorized" to sexually abuse or harass their students.

For these reasons, we find no error in that part of the judgment declaring that the board has no duty to provide counsel to Mr. Matta. If the General Assembly wants to require county boards of education to provide counsel for teachers or other employees who are accused of engaging in the deliberate and vicious sexual abuse of their students, it will have to say so more clearly.

The issue of coverage, as we indicated, will depend on what the terms and conditions of the self-insurance are. We see no reason, under *Brohawn,* why that cannot properly be developed in this declaratory judgment proceeding. Although it may turn out, ultimately, to hinge on how the trier of fact resolves the tort action, that is not so clear at this juncture. *See also* Md.Educ.Code Ann. § 4–105.1(b) allowing the issue of whether a board employee acted within the scope of employment to be "litigated separately." We shall therefore remand that aspect of the case for further proceedings.

JUDGMENT AFFIRMED IN PART AND VACATED IN PART; CASE REMANDED TO CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY FOR FURTHER PROCEEDINGS; KELLI M. FLANAGAN, STEPHANIE A. MARSHALL, AND LAURA A. SISK TO PAY THE COST OF THEIR BRIEF; BALANCE OF THE COSTS TO BE PAID ONE–HALF BY APPELLANT MATTA AND ONE–HALF BY APPELLEES, BOARD OF EDUCATION, COLGAN, AND MURPHY.